IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

MARILYN MAE MATSON; AND CLIFTON W. MATSON,

Defendants.

8:19CV

**COMPLAINT**

Comes now the Plaintiff by Joseph P. Kelly, Acting United States Attorney for the District of Nebraska and Timothy R. Hook, Assistant United States Attorney for this District, and for its cause of action alleges:

(1) This is a civil action brought by the United States of America under the provisions of 28 U.S.C. § 1345.

(2) Wayne R. Matson died on March 29, 2002. Wayne R. Matson and Marilyn Mae Matson held title as joint tenants with right of survivorship, and upon Wayne R. Matson's passing, Marilyn Mae Matson held title to the property in fee simple.

(3) Service may be made in the following manner:

(a) Defendant Marilyn Mae Matson, (Borrower), may be served by delivering a copy of the Summons and Complaint to her in Hitchcock County, Nebraska, within the jurisdiction of this court.

(b) Defendant Clifton W. Matson, may be served by delivering a copy of the Summons and Complaint to him in Lancaster County, Nebraska, within the jurisdiction of this court.

(4) On or about February 6, 1997, the Defendant Marilyn Mae Matson and the deceased borrower Wayne R. Matson, executed and delivered to the Plaintiff, United States of America, acting through the Farmers Home Administration, now the Rural Housing Service, an agency of the United States Department of Agriculture, a Promissory Note whereby they promised to pay to Plaintiff the sum of $40,370.00, with interest thereon at 7.250 percent per annum. As consideration of the Note, Plaintiff made a Rural Housing loan to the Defendant and the deceased borrower Wayne R. Matson, pursuant to the provisions of Title V of the Housing Act of 1949 (42 U.S.C. § 1471et seq.). A true and correct copy of the Note is attached as **Exhibit A**.

(5) At the same time and place and as part of the same transaction, to secure the payment of the Note, the Defendant, Marilyn Mae Matson and the deceased borrower Wayne R. Matson, executed and delivered to the Plaintiff, a purchase-money security interest in the form of a Real Estate Mortgage upon certain real estate in Red Willow County, Nebraska, within the jurisdiction of this court, to-wit:

**Lot One (1), Block Five (5), Tenth Addition to the City of McCook.**

This Mortgage was recorded in the Office of the Recorder of Deeds of Red Willow County, Nebraska, on February 6, 1997 in Book 163, at Pages 552-555. A true and correct copy of the Mortgage is attached as **Exhibit B**.

(6) Pursuant to the Housing Act of 1949, as amended, 42 U.S.C. § 1490a, and the implementing regulations, 7 C.F.R. § 3550.162, the Real Estate Mortgage also secured the recapture of interest credit or subsidy granted to the Defendant, Marilyn Mae Matson and the deceased borrower Wayne R. Matson. The total amount of interest credit or subsidy subject to recapture is $15,381.50.

(7) The Plaintiff is the owner and holder of the Promissory Note and Real Estate Mortgage, attached as **Exhibits A and B**.

(8) Upon information and belief, Defendant Marilyn Mae Watson conveyed title to the property described in paragraph (5) above to Defendant Clifton Matson, by way of warranty deed, on or about May 24, 2002. This conveyance was done without the knowledge and consent of Plaintiff.

(9) Defendant, Marilyn Mae Matson, filed for Chapter 7 Bankruptcy relief in the United States Bankruptcy Court, District of Nebraska, in Petition No. 4:05bk43797. The Court granted a discharge on January 27, 2006, and the case was closed on January 27, 2006. The Agency's debt was reaffirmed pursuant to a reaffirmation agreement filed with the Court on December 1, 2005 (Doc No.13, Case No. 4:05bk43797, U.S. Bankruptcy Court, District of Nebraska). A true and correct copy of the reaffirmation agreement is attached as **Exhibit C**.

(10) The Defendant, Marilyn Mae Matson, failed to pay to Plaintiff installments of principal and interest when due in violation of the provisions of the Note and Mortgage. The Plaintiff has accelerated the indebtedness and made demand for payment in full. No voluntary payment has been directly received from the borrower.

(11) The Defendant, Marilyn Mae Matson, owes, pursuant to the provisions of the Promissory Note and Real Estate Mortgage, a balance of $64,516.36, which includes $40,100.96 in principal (comprised of $27,371.93 in unpaid principal and $12,729.03 in advances); and $9,033.90 in interest (consisting of $7,263.69 in interest on principal and $1,770.21 interest on advances), as of March 7, 2019, plus interest accruing thereafter at the daily rate of $7.9638 (consisting of $5.4368 daily interest on principal and $2.5270 daily interest on advances); and $15,381.50 in interest credit or subsidy subject to recapture.

(12) No other action has been brought for the recovery of the balance due.

(13) The Plaintiff has completed all loan servicing requirements of Title V of the Housing Act of 1949, 42 U.S.C. § 1471, et seq.

(14) The Defendant, Clifton W. Matson, may claim an interest in the security property pursuant to a Deed in his favor filed in the Office of the Register of Deeds for Red Willow County on September 27, 2002, in Book 129 at Page 821.

(15) The interests of all the Defendants are junior and inferior to the interests of the Plaintiff.

(16) None of the Defendants have a right to redemption after foreclosure sale herein.

WHEREFORE, the Plaintiff demands judgment *in rem* against the mortgaged property in the amount of $64,516.36, which includes $40,100.96 in principal (comprised of $27,371.93 in unpaid principal and $12,729.03 in advances); and $9,033.90 in interest (consisting of $7,263.69 in interest on principal and $1,770.21 interest on advances), as of March 7, 2019, plus interest accruing thereafter at the daily rate of $7.9638 (consisting of $5.4368 daily interest on principal and $2.5270 daily interest on advances); and $15,381.50 in interest credit or subsidy subject to recapture.

The Plaintiff further demands that its Mortgage be declared a first and paramount lien on the real estate described therein and that such advances as the Plaintiff may be authorized and required to pay for insurance premiums, real estate taxes, title fees, or other costs necessary to protect the security during the pendency of this proceeding to be allowed as a first and prior lien on the security.

The Plaintiff further demands that all legal right, title and interest which said Defendants have in the real estate be sold at public sale, without redemption, in accordance with 28 U.S.C. §§ 2001-2003, inclusive, and that the sale be subject to any unpaid real estate taxes or special assessments, and that the sale proceeds be applied in the following order:

(1) Filing fees allowed pursuant to 28 U.S.C. § 2412(a)(2);

(2) The costs of the sale and of this action;

(3) The interest accruing on the Plaintiff's judgment i*n rem* against the mortgaged property;

(4) The Plaintiff's judgment *in rem* against the mortgaged property and the Defendants;

(5) The Plaintiff's judgment for interest credit or subsidy subject to recapture; and

(6) The balance, if any, be brought into this Court to await its further order.

The Plaintiff further demands that all right, title and interest in and to the real estate of the Defendants, Marilyn Mae Matson and Clifton W. Matson, and of all persons claiming by, through or under them to be decreed to be junior and inferior to the Plaintiff's Mortgage and be absolutely barred and foreclosed.

If the purchaser of the real estate be denied possession, the Plaintiff prays that upon the filing of a proper Praecipe, this Court issue a Writ of Assistance and without further order of this Court place the purchaser of the real estate in peaceable possession.

UNITED STATES OF AMERICA,
Plaintiff

JOSEPH P. KELLY
United States Attorney for the
District of Nebraska

By: s/ Timothy R. Hook
TIMOTHY R. HOOK, #24529
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Tel: (402) 661-3700
Fax: (402) 661-3086
E-mail: tim.hook@usdoj.gov

Of Counsel:

Office of General Counsel
U.S. Department of Agriculture, Rural Development
Beacon Facility – Mail Stop 1401
P.O. Box 419205
Kansas City, MO 64141-6205
Tel: (816) 823-4646
Fax: (816) 823-4688

REQUEST FOR PLACE OF TRIAL

The United States hereby requests that trial of the above-entitled matter be held in the City of Omaha, Nebraska.

/s/ Timothy R. Hook
TIMOTHY R. HOOK

# PROMISSORY NOTE

| TYPE OF LOAN |
| --- |
| [redacted] |

| STATE |
| --- |
| NEBRASKA |
| COUNTY |
| RED WILLOW |
| CASE NO. |
| [redacted]176 |

Date FEBRUARY 6, 1997.

**FOR VALUE RECEIVED**, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in MCCCOOK, NEBRASKA,

**THE PRINCIPAL SUM OF** FOURTY THOUSAND THREE HUNDRED SEVENTY DOLLARS AND NO/100-------

**DOLLARS ($** 40,370.00 ), plus **INTEREST** on the **UNPAID PRINCIPAL** of SEVEN AND ONE QUARTER **PERCENT (** 7 1/4 **%) PER ANNUM.**

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☐ I. Principal and Interest payments shall be deferred. The interest accrued to ______, 19___ shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in ______ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $ ______ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II. Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the ______ of each ______ beginning on ______, 19___, through ______, 19___, Principal and later accrued Interest shall be paid in ______ installments as indicated in the box below;

☒ III. Payments shall not be deferred. Principal and Interest shall be paid in 396 installments as indicated in the box below:

$ 269.00 on MARCH 6, 1997, and

$ 269.00 thereafter on the SIXTH of each MONTH until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and **PAYABLE** THIRTY THREE ( 33 ) **YEARS** from the **DATE** of this **NOTE**. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

EXHIBIT
A

If the total amount of the loan is . advanced at the time of loan closing, the lo... shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

SUBSIDY REPAYMENT AGREEMENT: Borrower agrees to the repayment (recapture) of subsidy granted in the form of interest credits. Subsidy will be repaid when the borrower's account is settled by sale of the security property, refinancing or payment in full and will be calculated in accordance with regulations in effect at the time of settlement. Recapture is based on property appreciation and can equal all, some or none but never exceed the amount of subsidy received.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

WARNING: Failure to fully disclos- accurate and truthful financial information mav result in the termination of program assistance currently being received, . the denial of future program assistance unde 5DA's Debarment regulations, 7 CFR Part 3017.

**Presentment, protest, and notice are hereby waived.**

/s/ Marilyn M. Matson (SEAL)
MARILYN M. MATSON *(BORROWER)*

/s/ Wayne R. Matson (SEAL)
WAYNE R. MATSON *(CO-BORROWER)*

McCook, NE 69001

RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ 40,370.00 | 02-06-97 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 40,370.00 | |

Recorded Book 163, Page 552
February 6, 1997, 3:45 P.M.

Pauletta Hein
Reg. of Deeds, Red Willow Co.

USDA-RECD
Form FmHA 1927-1 NE
(Rev. 10-95)

*Position 5*

# REAL ESTATE MORTGAGE FOR NEBRASKA

THIS MORTGAGE is made and entered into by Wayne R. Matson and Marilyn M. Matson, husband and wife,

residing in Red Willow County, Nebraska, whose post office address is [redacted], McCook, Nebraska 69001, herein called "Borrower," and the United States of America, acting through the United States Department of Agriculture, herein called the "Government":

WHEREAS Borrower is indebted to the Government, as evidenced by one or more promissory notes or assumption agreements or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| February 6, 1997 | $40,370.00 | 7 1/4% | February 6, 2030 |

(The interest rate for limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in the Government's regulations or the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statute administered by the Government.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472 (g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

NOW, THEREFORE, in consideration of the loans and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by the Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, bargain, sell, convey and assign, with general warranty, unto the Government the following property situated in the State of Nebraska, County(ies) of Red Willow:

Lot One (1), Block Five (5), Tenth Addition to the City of McCook,



EXHIBIT B

553

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest there-in-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Government.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Such advances, with interest, shall be repaid from the first available collections received from Borrower. Otherwise, any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and all taxes and assessments levied upon this mortgage or the note or any indebtedness hereby secured or against any legal holder hereof or of the note or of said indebtedness under the laws of Nebraska, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided by Government regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any rights, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as provided in 7 C.F.R. part 1940, subpart G, exhibit M.

(18) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

(19) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(20) Borrower agrees that the Government will not be bound by any present or future State law, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

(21) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, handicap, familial status, age or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, handicap, familial status, age or national origin.

(22) This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government at Lincoln, Nebraska 68508, and in the case of Borrower at the address shown in the Finance Office records (which normally will be the same as the post office address shown above).

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) this 6th day of February, 19 97.

Wayne R. Matson (Borrower)

Marilyn M. Matson (Borrower)

STATE OF NEBRASKA
COUNTY OF RED WILLOW } ss:

**ACKNOWLEDGMENT**

On this 6th day of February A.D., 19 97, before me, a Notary Public in and for said County, personally appeared Wayne R. Matson and Marilyn M. Matson, husband and wife, to me known to be the identical person(s) named in and who executed the foregoing instrument and acknowledged that they executed the same as their voluntary act and deed.

John F. Hanson Notary Public

(SEAL)

GENERAL NOTARY-State of Nebraska
JOHN F. HANSON
My Comm. Exp. Sept. 17, 1997

My commission expires Sept. 17, 1997.

555

FEEBOOK
RECORD
COMPARED
NUMERICAL
GRANTOR
GRANTEE
CHARGED

# REAFFIRMATION AGREEMENT

Debtor's Name
MARILYN MAE MATSON

Bankruptcy Case No.
05-43797

Acct.#

INSTRUCTIONS:
1) Write debtor's name and bankruptcy case number above.
2) Part A-Must be signed by both the debtor and the creditor.
3) Part B-Must be signed by the attorney who represents the debtor in this bankruptcy case.
4) Part C-Must be completed by the debtor if the debtor is not represented by an attorney in this bankruptcy case.
5) File the completed form by mailing or delivering to the Bankruptcy Clerk.
6) Attach written agreement, if any.

COURT USE ONLY

## PART A - AGREEMENT

Creditor's Name and Address
USDA - RURAL DEVELOPMENT
CENTRALIZED SERVICING CENTER
PO BOX 66879
St. Louis, MO. 63166

Date Set For Discharge Hearing (if any)

Summary of Terms of the New Agreement

a) Original Principal Amount $ 37019.59
Interest Rate (APR) % 7.25000
Monthly Note Payment $ 269.00
b) Description of Security Real Estate
c) Loan is reaffirmed on same rates and terms as original loan and in accordance with all relevant RD - RHS regulations.

THE PARTIES UNDERSTAND THIS AGREEMENT IS PURELY VOLUNTARY; THE DEBTOR MAY RESCIND THE AGREEMENT AT ANY TIME PRIOR TO DISCHARGE OR WITHIN 60 DAYS AFTER SUCH AGREEMENT IS FILED WITH THE COURT, WHICHEVER OCCURS LATER, BY GIVING NOTICE OF RESCISSION TO THE CREDITOR; AND THIS AGREEMENT IS NOT REQUIRED UNDER BANKRUPTCY CODE, NON-BANKRUPTCY LAW, OR ANY AGREEMENT NOT IN ACCORDANCE WITH 11 U.S.C. ..524 (C).

10-14-05
Date

William E. McClain
Signature of Creditor

Signature of Debtor

Signature of Joint Debtor

## PART B-ATTORNEY'S DECLARATION

This agreement represents a fully informed and voluntary agreement and does not impose an undue hardship upon the debtor or any dependent of the debtor. I have fully advised the debtor of the legal effect and consequences of an agreement of this kind and any default under such an agreement.

11-1-05
Date

Bert E Blackwell
Signature of Debtor's Attorney

## PART C-MOTION FOR COURT APPROVAL OF AGREEMENT - Complete only where debtor is not represented by an attorney.

I (we), the debtor,affirm the following to be true and correct:
1) I am not represented by an attorney in connection with this bankruptcy case.
2) My current monthly net income is $ ____________
3) My current monthly expenses total $ ____________ including any payment due under this agreement.
4) I believe that this agreement is in my best interest because ____________

Therefore, I ask the court for an order approving this reaffirmation agreement.

Signature of Debtor

Date

Signature of Joint Debtor

## PART D - COURT ORDER

The court grants the debtor's motion and approves the voluntary agreement upon the terms specified above.

Date

Bankruptcy Judge

EXHIBIT C